AO 91 (Rev. 11/11)  Criminal Complaint

ORIGINAL

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT

DEC - 5 2019

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

United States of America

v.

ALEXANDER POLANCO,

Defendant

Case No.

19 MJ05178

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. Between on or about the dates of March 2019 to June 2019, in the county of Los Angeles in the Central District of California, defendants violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts: *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Eric Hakala, TFO, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Dec 5, 2019

_____
*Judge's signature*

City and state:  Los Angeles, California

Hon. Michael Wilner, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Eric Hakala, being duly sworn, declare and state as follows:

## I.   PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a complaint and arrest warrant for Alexander Polanco ("POLANCO") for a violation of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute Controlled Substances).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II.   BACKGROUND OF AFFIANT

3.    I am a peace officer for the Los Angeles County Sheriff's Department and have been employed in this capacity since October 1991.  I am currently assigned to the narcotics bureau as a narcotics investigator.  I am also currently assigned to the DEA Los Angeles Field Division, Los Angeles International Airport ("LAX") Narcotics Enforcement Task Force ("NTF"), as a Task Force Officer (TFO) and have been so for approximately two and a half years.

4.    In my current capacity as a DEA TFO and as a member of
the NTF, I primarily investigate large-scale drug trafficking and
money laundering organizations, focusing on the identification and
investigation of individuals using the airports to transport drugs
and/or drug proceeds.  Through my training and experience, I am
familiar with the methods of operation that drug traffickers use,
including the distribution, storage, and transportation of drugs
and the collection of proceeds from drug trafficking, and various
methods of money laundering used to conceal the nature of the
proceeds.  I am also familiar with the ways in which drug
traffickers communicate, including through coded communications in
calls, text messages, and messages through messaging applications.

5.    In addition to the formal narcotics training received in
the Los Angeles County Sheriff's Academy, I completed a forty-hour
criminal investigations course.  I hold an Advanced Peace Officers
Standard of Training certificate and attended several seminars in
the field of criminal investigation and narcotics and substance
abuse.  I was promoted to narcotics bureau in September 2002 and
am still assigned to this bureau.  I have conducted interviews of
hundreds of illicit narcotic users, buyers, sellers, and
informants and their connection to the offenses previously
mentioned.  I have arrested, and assisted in hundreds of narcotic
related arrests.  I have investigated, written search warrants,
and made arrests dealing with narcotic related offenses.  I have
testified as an expert in narcotics related crimes, both in
municipal and superior court.  I have written state and federal

warrants for locations, GPS tracking, pole cameras, and other investigative leads associated with drug trafficking organizations.

### III. **SUMMARY OF PROBABLE CAUSE**

6.   On December 5, 2019, Transportation Security Administration ("TSA") officers at LAX found two packages of an unknown substance in vacuum-sealed bags inside a checked suitcase with baggage tags attached bearing the name of POLANCO.  That same day, POLANCO boarded American Airlines ("AA") flight #253, which was traveling from LAX to Kahului, Hawaii International Airport ("OGG") in Maui, Hawaii.  LAX NTF personnel responded to the TSA baggage screening area and subsequently determined the packages contained heroin, with a gross weight of 1.8 kilograms.

### IV. **STATEMENT OF PROBABLE CAUSE**

7.   Based on my review of law enforcement and TSA reports, my discussions with other law enforcement officers and TSA agents, as well as my own observations and knowledge of the investigation, I am aware of the following:

#### A.   **TSA Agents Identify Suspicious Substance in POLANCO's Checked Bag**

8.   On the morning of December 05, 2019, TSA Officer Mike Reynolds was assigned to conduct security screenings of checked luggage in the LAX Terminal 4 baggage screening room.  Officer Reynolds was altered when a screening machine identified a suspicious bulk mass inside a checked suitcase.  TSA Officer Reynolds removed the suitcase, a pink American Tourister hard-

sided suitcase, from the screening machine and opened the suitcase
to search for any hazardous materials.

9.     TSA Officer Reynolds discovered a shoebox wrapped in
Christmas-themed wrapping paper inside the suitcase.  TSA Officer
Reynolds opened the box and found two other, Christmas wrapped
items.  He unwrapped one of the items and saw that the item was in
a vacuum-sealed bag.  TSA Officer Reynolds cut open the vacuum-
sealed bag and discovered a plastic "Tupperware" type container.
TSA Officer Reynolds removed the lid to the container and saw an
unidentified brown substance inside.  Suspecting that the packages
contained narcotics, TSA Officer Reynolds immediately contacted
TSA supervisor Ruth Tabuno.

10.    TSA Supervisor Tabuno subsequently notified TSA
Transportation Security Specialist Explosives ("TSSE") Manuel
Romero.  TSSE Romero arrived on scene and advised the packages
tested negative for any explosive and appeared to be narcotics.

**B.     LAXPD Officers Believe the Packages Contained Narcotics**

11.    TSA notified LAX Police Department ("LAXPD") about the
suspicious baggage and responded to further inspect the suitcase.
Based on their training and experience, LAXPD Officers Sur and
Nugent believed the packages appeared to be narcotics.  At
approximately 8:30 a.m., DEA TFO Marlon Coronado and I were
notified of the suspected narcotics and responded to the LAX
Terminal 4 baggage screening room.

### C.   The Packages in POLANCO's Suitcase Tested Positive for Heroin

12.  TFO Coronado and I arrived on scene at approximately 8:40 a.m. and secured POLANCO's suitcase and its contents.  TFO Coronado and I then transported the suitcase and suspected narcotics to the DEA LAXNTF office.  DEA Special Agent Norm Tobias tested each package with a TruNarc Raman spectrometer used for the rapid identification of suspected narcotics.

13.  In total from POLANCO's suitcase, the shoebox contained one vacuum-sealed package containing a Tupperware container and the other vacuum-sealed bag contained two separate packages.  All packages tested positive for heroin for a gross weight of 1.82 kilograms.

### D.   LAXPD Identifies POLANCO's Name on Baggage Tag and Confirms POLANCO Onboard Flight to Maui, Hawaii

14.  Prior to our arrival on scene, the LAXPD officers identified the baggage tag (#6001859103) on the Pink American Tourister suitcase, which had POLANCO's name on it and his flight information, AA253.

15. Based on my knowledge of and experience with AA's standard practices at LAX, the passenger whose name is on the plane ticket and baggage tag must be physically present to provide an AA representative his or her valid photo identification.  The AA representative then verifies the passenger's name and the date of birth on the reservation before allowing that passenger to check a bag or suitcase.  That passenger's name (and not someone else's) is then printed on the

tag, which is then immediately affixed to the bag or suitcase. AA then typically takes custody of the bags or suitcases from the passenger, thus making it highly unlikely that someone else removed the tag from the checked suitcase and placed it on a different suitcase. This leads me to believe that POLANCO personally checked his Pink American Tourister suitcase with an AA representative upon arriving at the airport.

16.  LAXPD Officers Perez and Garcia went to Terminal 4 and spoke with AA Representative. The American Airlines representative informed the officers that AA253 had already departed with POLANCO on board.

**V.    CONCLUSION**

17.  Based on the foregoing, there is probable cause to believe that POLANCO violated Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute Controlled Substances).

Eric Hakala
Drug Enforcement Administration
Taskforce Officer (TFO)

Subscribed to and sworn before me this 5th day of December, 2019.

THE HON. MICHAEL WILNER
UNITED STATES MAGISTRATE JUDGE